457 F.2d 1223
 Kenneth H. SCHLOMANN, Petitioner-Appellant,
v.
R. I. MOSELEY, Warden, United States Penitentiary,
Leavenworth, Kansas, Respondent-Appellee.
 No. 473-70.
 United States Court of Appeals,
Tenth Circuit.
 March 24, 1972.
 
 Donald E. Phillipson, of Davis, Graham & Stubbs, Denver, Colo., for petitioner-appellant.
 Lieutenant Colonel Arnold I. Melnick, Washington, D. C. (Robert J. Roth, U. S. Atty., Richard L. Meyer, Asst. U. S. Atty., and Captain Michael A. Katz, Office of the Judge Advocate Gen., Dept. of the Army, with him on brief), for respondent-appellee.
 Before JONES* and HOLLOWAY, Circuit Judges, and BRATTON,** District Judge.
 HOLLOWAY, Circuit Judge.
 
 
 1
 The central issue before us is the retroactivity of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291. Specifically, the question is whether the 1969 opinion may be invoked to set aside convictions by a General Court Martial for non-service connected offenses although such convictions became final prior to the decision in O'Callahan. The issue arises in habeas proceedings in which the District Court held O'Callahan not retroactive and denied relief.
 
 
 2
 The facts are detailed in the opinion of the Court of Military Appeals which affirmed the convictions, United States v. Schlomann, 16 USCMA 414, 37 CMR 34, and therefore we refer only briefly to the principal facts. The tragic offenses occurred on July 1, 1963. Appellant Schlomann was then an Army enlisted man stationed at Fort Wainwright, Alaska. However, the Government concedes that these offenses against civilians in Alaska were not service connected. See note 2, infra.
 
 
 3
 That afternoon Schlomann and his wife had visited a bar and restaurant near the Fort but she departed for work. Schlomann returned to a Noncommissioned Officers' Club on the post but then left the post again by taxicab, while carrying an unopened liquor bottle, and arrived at a local skating rink shortly after 9:00 p. m. He had been drinking beer, was belligerent and was carrying a rifle. He ordered the cab driver, Mr. Howard, out of the taxi and shortly thereafter shot Howard, approached and shot him again and he died of these wounds. Schlomann was convicted of unpremeditated murder for Howard's death under Article 118 of the Uniform Code of Military Justice, 10 U.S.C. Sec. 918.
 
 
 4
 After further difficulties at the skating rink, Schlomann drove the cab to a nearby motel. While a Mrs. Leonard was attempting to call for police help, he shot and wounded her. For this offense he was convicted of assault with a dangerous weapon in violation of Article 128 of the Code, 10 U.S.C. Sec. 928. He then shot and killed her husband and one George Stockton. At about the time of these shootings he was demanding money. For these homicides he is under two convictions for felony murder in violation of Article 118 of the Code, 10 U.S.C. Sec. 918. In connection with his demands at the motel he was also convicted of attempted robbery under Article 80 of the Code, 10 U.S.C. Sec. 880.
 
 
 5
 All of the charges were tried together by a General Court-Martial in 1964 at Fort Richardson, Alaska, and Schlomann was found guilty of the charges as stated. He was sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for life and reduction in grade. The sentences remained undisturbed by all reviewing authorities and the convictions and sentences as rendered were affirmed by the Board of Review and the Court of Military Appeals as reflected in United States v. Schlomann, supra.
 
 
 6
 Schlomann is in custody at Leavenworth and commenced these habeas proceedings in the United States District Court for the District of Kansas. In a first case filed in October, 1969, he raised the issues we consider, alleging that the military tribunals were without jurisdiction so that his convictions were void. The District Court denied relief in May, 1970. A further habeas proceeding was brought in June, 1970, on the same grounds. The Court's opinion, rendered that month, said the petition was successive, but also considered the merits and denied relief. These opinions are reported at 340 F.Supp. 1393, 1395. Schlomann appealed from both judgments by a timely notice. We, therefore, consider both cases as to all of the contentions raised by Schlomann.[1]
 
 
 7
 Before turning to the issues we should say we are satisfied that these offenses were not service connected under present requirements for military jurisdiction. This test of O'Callahan has been analyzed in detail and is the measure of service connected offenses. See Relford v. United States Disciplinary Commandant, 401 U.S. 355, 365, 91 S.Ct. 649, 28 L.Ed.2d 102. Under all of these guidelines the offenses lack connection to the military. Moreover, the Government concedes that the offenses were not service connected. Therefore, if the O'Callahan requirement as to service connected offenses applies to these earlier convictions, they may not be sustained as meeting that requirement as was the case in Relford and Swisher v. Moseley, 442 F.2d 1331 (10th Cir.).[2]
 
 
 8
 Thus, the retroactivity of O'Callahan is the critical question we face.[3] The particular issues presented are: (1) whether retroactive application of O'Callahan is compelled by its jurisdictional terminology and its reasoning that military tribunals lack power to adjudicate non-service connected offenses; (2) whether O'Callahan should be made retroactive under generally applied tests for newly announced constitutional rules; and (3) whether, in any event, trial by the military tribunal for these offenses denied due process and other rights.[4]
 
 
 9
 The jurisdictional terminology and constitutional
 
 
 10
 interpretations of O'Callahan v. Parker
 
 
 11
 The question of the retroactivity of O'Callahan v. Parker presents difficult problems. They are more complex than many studied in determining whether a new procedural rule or a new principle implementing a constitutional guarantee are to be applied retroactively. The complexity arises from the nature of the holding in O'Callahan. In the opinion the Court referred back to the question on which certiorari was granted, repeating that it involved whether under the circumstances a court-martial may ". . . have jurisdiction to try a member of the Armed Forces." 395 U.S. at 261, 89 S.Ct. at 1685, 23 L.Ed.2d 291. The Court's conclusions were stated as follows:
 
 
 12
 "We have concluded that the crime to be under military jurisdiction must be service connected, lest 'cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger,' as used in the Fifth Amendment, be expanded to deprive every member of the armed services of the benefits of an indictment by a grand jury and a trial by a jury of his peers. The power of Congress to make 'Rules for the Government and Regulation of the land and naval Forces,' Art. I, Sec. 8, cl. 14, need not be sparingly read in order to preserve those two important constitutional guarantees. For it is assumed that an express grant of general power to Congress is to be exercised in harmony with express guarantees of the Bill of Rights." (395 U.S. at 272-273, 89 S.Ct. at 1690)
 
 
 13
 ******
 
 
 14
 * * *
 
 
 15
 "We have accordingly decided that since petitioner's crimes were not service connected, he could not be tried by court-martial but rather was entitled to trial by the civilian courts." (395 U.S. at 274, 89 S.Ct. at 1692)
 
 
 16
 The jurisdictional basis of O'Callahan seems clear. We agree that its limitations on the Code and military courts were stated in terms of "adjudicatory power." See Gosa v. Mayden, 450 F.2d 753, 756-757 (5th Cir.); United States ex rel. Flemings v. Chafee, 330 F.Supp. 193, 195-196 (E.D.N.Y.); contra, United States v. King, ACM 20361, review denied USCMA 40 CMR 327. Therefore, we must consider whether the jurisdictional basis of O'Callahan compels its retroactive application.
 
 
 17
 It is fundamental that a conviction by a tribunal lacking jurisdiction may be set aside by habeas proceedings. McClaughry v. Deming, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049; In re Snow, 120 U.S. 274, 285, 7 S.Ct. 556, 30 L.Ed. 658. It may be argued forcefully that where a later opinion decides that jurisdiction did not exist as to some subject matter, it must apply retroactively. However, we are not persuaded that because the later decision is grounded in jurisdictional terms that consideration is foreclosed as to how it should apply. Such a retroactivity question is more critical and the factors may be viewed differently, but the jurisdictional terminology does not dispense with the duty to decide whether "the Court may in the interest of justice make the rule prospective . . . where the exigencies of the situation require such an application." Johnson v. New Jersey, 384 U.S. 719, 726-727, 86 S.Ct. 1772, 1777, 16 L.Ed.2d 882; Linkletter v. Walker, 381 U.S. 618, 628, 85 S.Ct. 1731, 14 L.Ed.2d 601; Tehan v. U. S. ex rel. Shott, 382 U.S. 406, 410, 86 S.Ct. 459, 15 L.Ed.2d 453.
 
 
 18
 We are satisfied that O'Callahan v. Parker made "a clear break with the past," Desist v. United States, 394 U.S. 244, 248, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248, and that we should consider whether its application should be prospective or retroactive. Linkletter v. Walker, supra, recognized the duty to make such a determination as to cases announcing new constitutional rules, as had earlier been done otherwise. E. g. Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360. Since the broad principle for considering the soundness of prospective or retroactive application applies to constitutional rulings, we are persuaded that determination should be made for the O'Callahan ruling also. We agree that for such newly announced jurisdictional rule, a prospective application is a proper "judicial technique of general application" McSparran v. Weist, 402 F.2d 867, 877 (3d Cir.), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217.
 
 
 19
 Where the exigencies of the situation demand, prospective application has been made of jurisdictional decisions in civil cases, McSparran v. Weist, supra, as well as criminal cases. Warring v. Colpoys, 74 U.S.App.D.C. 303, 122 F.2d 642, cert. denied, 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543. In Warring the Court said that under the circumstances a later Supreme Court decision restricting jurisdiction "should not be applied so as to sweep away that power as of 1939." 122 F.2d at 647.[5]
 
 
 20
 We are not persuaded that the jurisdictional terminology of O'Callahan compels us to refuse consideration of prospective application. Gosa v. Mayden, supra; contra, United States ex rel Fleming v. Chafee, supra. The broad principles governing retroactivity have been considered in applying land mark constitutional decisions.[6] Among those given only prospective application were constitutional pronouncements on one fundamental right stressed in O'Callahan-trial by jury. See DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308. The Court has observed that it does not disparage a constitutional guarantee by declining to apply a new ruling on it retroactively, and that retroactivity does not turn on the value of the constitutional guarantee involved. Johnson v. New Jersey, supra, 384 U.S. at 728, 86 S.Ct. 1772.[7] We conclude that retroactivity likewise does not turn on whether a jurisdictional ruling is involved.
 
 
 21
 Thus we feel that the proper application of O'Callahan, despite its jurisdictional basis, must also be determined under those principles governing retroactivity which the Supreme Court has given us. We turn to their consideration now.
 
 
 22
 The Supreme Court's criteria for determining retroactivity
 
 
 23
 The familiar criteria on retroactivity stated in Linkletter v. Walker, supra at 629, are controlling. Under new standard, the extent of reliance by them, as repeatedly stated, we must consider the purpose to be served by the law enforcement authorities on the old standard, and the effect on the administration of justice that retroactive application of O'Callahan would bring. Stovall v. Denno, supra, 388 U.S. at 297, 89 S.Ct. 1967.
 
 
 24
 Foremost among these criteria is the purpose to be served by the new rule. Desist v. United States, supra. From the language of O'Callahan its purpose appears to be to confine the criminal jurisdiction of military tribunals, due to shortcomings as noted, and also to avoid unjustified deprivation of servicemen's rights to indictment by grand jury and trial by jury, which would otherwise result from expansion of the Fifth Amendment exception relating to ". . . cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger . ." O'Callahan v. Parker, supra, 395 U.S. at 272-273, 89 S.Ct. at 1690.
 
 
 25
 Confinement of criminal jurisdiction of courts-martial would serve to protect the advantages of trial in regular civil courts. The Court noted advantages of the civil courts in objectivity, independence, tradition, procedure and experience, 395 U.S. at 263-265, 89 S.Ct. 1683, which would be available. And it is true that where the new rule seeks to avoid a fundamentally unfair trial or serious flaws in fact-finding procedure, retroactivity has been favored. Roberts v. Russell, 392 U.S. 293-294, 88 S.Ct. 1921, 20 L.Ed.2d 1100.[8]
 
 
 26
 However, despite O'Callahan's criticism of the court-martial system there is no indication that its procedures are fundamentally unfair or violative of due process. Convictions under the military system for service connected offenses remain generally undisturbed. There is no constitutional or statutory barrier to trial of such offenses by a court-martial. Relford v. United States Disciplinary Commandant, supra, 401 U.S. at 369, 91 S.Ct. 649. And this Term the Court has reaffirmed the basic principles of comity that must prevail between civilian courts and the military judicial system. See Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17. Therefore, we feel that the Court's opinions manifest no view of fundamental unfairness in military trials that would dictate retroactivity.
 
 
 27
 We likewise feel that the purpose in O'Callahan of protecting the constitutional rights that it stresses-indictment by grand jury and trial by petit jury-does not call for retroactivity. As others have observed the Supreme Court denied retroactivity to the decisions applying to the states the right to jury trial for serious criminal and contempt charges. DeStefano v. Woods, supra. Moreover the Fifth Amendment right of indictment by a grand jury has not been viewed as so fundamental as to be a part of due process and applicable to State procedure. See Beck v. Washington, 369 U.S. 541, 545, 82 S.Ct. 955, 8 L.Ed.2d 98.[9] Thus, we again conclude that the purpose of protecting such rights, important but not critical to fundamental fairness, does not call for retroactivity of O'Callahan.
 
 
 28
 The remaining criteria to consider are the extent of reliance by law enforcement authorities on the prior rule and the effect of retroactivity on judicial administration. Appellant says that O'Callahan was foreshadowed by prior Supreme Court cases.[10] We feel that none of these decisions pointed to the departure of O'Callahan from status as the basis for criminal jurisdiction over servicemen as reaffirmed in Kinsella, Gosa v. Mayden, supra; Mercer v. Dillon, supra; and that O'Callahan was ". . . a clear break with the past . . ." Desist v. United States, supra 394 U.S. at 248, 89 S.Ct. at 1033. We agree with these Courts that until O'Callahan, military and State law enforcement authorities justifiably relied on status as the test for jurisdiction over servicemen.
 
 
 29
 The final consideration is the effect retroactivity would have on the administration of justice. Appellant Schlomann argues that the District Court made no findings on the issue as to the number of cases of this type which would be affected, and that the effect would not be significant. We cannot agree.
 
 
 30
 It is true that in neither No. L-1003 nor L-1283 did the Court make such findings. However, we are satisfied that this matter is one of proper judicial notice and that a determination based on law and matters so noticed is sufficient. Such observations were relied on in part by the Supreme Court in denying retroactivity in Desist v. United States, supra 394 U.S. at 251, 89 S.Ct. 1030, and DeStefano v. Woods, supra, 392 U.S. at 634, 88 S.Ct. 2093. We, therefore, feel that the observations of Judge Stanley, accepted by Judge Brown, were proper in referring to the general numbers of cases involved and the data detailed in Mercer v. Dillon, supra.
 
 
 31
 In Gosa v. Mayden, supra, 450 F.2d at 766, the Court recited data from the Department of the Air Force advising that its court-martial systems have processed some 475,349 cases since 1949; that a two-year sampling indicated that 5% would constitute a reasonable hypothesis of the number of cases that could raise a retroactive O'Callahan issue; and that in this one branch of service alone, this would calculate to some 23,767 trials.[11] We need not detail the data at length. Mercer v. Dillon, supra at 267, noted that peacetime court-martial jurisdiction over offenses deemed non-service connected under O'Callahan was first conferred in 1916, and extended to include murder and rape committed in the United States in peacetime in 1950. Appellant argues that the effect should be considered only as to cases of conviction, as opposed to a guilty plea, and with the particular elements of O'Callahan. Even if such a restrictive application could be given the case, the impact would likely be substantial. The range of time and offenses involved, and the size of our military forces underscore the effect of retroactivity on the administration of justice. The difficulties and dangers in reopening large numbers of such cases obviously argue with great force for prospective application of O'Callahan.
 
 
 32
 In sum we are persuaded that the criteria under Supreme Court decisions justify and strongly call for limiting to prospective application the ruling in O'Callahan v. Parker. We agree with the view of the District Judges in these proceedings and those of the several courts that have reached a like conclusion. See Gosa v. Mayden, supra; Mercer v. Dillon, supra; United States v. King, supra; Thompson v. Parker, 308 F.Supp. 904 (M.D.Pa.); Harkcom v. Parker, No. 1093 (M.D.Pa.1970); and see Williamson v. Alldridge, 320 F.Supp. 840 (W.D.Okla.) (dictum); contra, United States ex rel. Flemings v. Chafee, supra.
 
 Due process and other rights
 
 33
 Lastly, appellant argues that he was denied Fifth Amendment due process, the right to indictment by grand jury and trial by petit jury, and was subjected to several disadvantages in military trial procedure and penalties which he says were less favorable to him than those provided by State law. He stresses trial for offenses carrying a death penalty possibility under military law as opposed to that of Alaska which allows no capital punishment. See Alaska Statutes Annotated, 1962, Title 11 Sec. 11.15.010. He contends that although he received a sentence of life imprisonment, nevertheless the members of the court-martial were faced with the sole alternative of life imprisonment or death after a determination of guilt. See 10 U.S.C. Sec. 918. Moreover, he says that decisions by the military tribunal were possible by a twothirds majority of the 11-man courtmartial, as opposed to a five-sixths majority being necessary for conviction under State law. See Alaska Statutes Annotated, Title 12 Sec. 12.45.010 and Title 9 Sec. 09.20.100. Appellant claims that he lost the advantages of these and other rights available under State law and federal rights, as stated above.
 
 
 34
 We believe that the views expressed above require rejection of Appellant's contentions. If he was lawfully tried by the military court, as we believe he was, then he was subject to the procedures and penalties which the law for the military forces provided. Since we have concluded that he was properly under regulation of military law, he was subject to the authority that included ". . not only the creation of offenses but the fixing of the punishment therefor." Kinsella v. United States ex rel. Singleton, supra, 361 U.S. at 246, 80 S.Ct. at 303.
 
 
 35
 We, therefore, hold that the District Court properly denied relief and its judgments are affirmed.
 
 
 
 *
 Of the Fifth Circuit, sitting by designation
 
 
 **
 Of the District of New Mexico, sitting by designation
 
 
 [1]
 The former action was L-1003 in which Chief Judge Stanley appeared to accept the fact that the offenses were not service connected and said the sole issue was the retroactivity of O'Callahan and held it not retroactive. The latter case is L-1283. There Judge Brown's order of dismissal referred to the prior opinion of Judge Stanley, saying that no new legal or factual grounds were presented, and also expressed his view against the retroactivity of O'Callahan
 Our record initially covered only the latter case, but we have since caused a supplementary record of the pertinent portions of the first proceeding to be incorporated in view of the appeal in both cases. Opportunity was afforded for additional memoranda addressing the supplemental record, but the parties did not find this necessary. The record now covers all the proceedings in both cases except a hearing transcript in the former case. Chief Judge Stanley's opinion indicates that there were no disputed facts decided and there was no reference to evidence being considered. The record, as now completed, thus appears sufficient as to all contentions raised in both cases.
 
 
 [2]
 Schlomann's petition in No. L-1003 alleged that he was off the post and that the offenses were civil offenses against civilians, committed in Alaska and not military offenses. The record is unclear as to allegation and denial that he was on pass, but we feel we should treat his pleading as so alleging. In any event, Schlomann's appeal brief asserts he was on pass and this is not denied by the Government, which concedes also that the offenses were not service connected. In No. L-1003 the Court appeared to treat the offenses as non-service connected and denied relief on the ground that O'Callahan was not retroactive
 In No. L-1283 Schlomann also alleged that he was out of uniform. Since that case was dismissed on consideration of the complaint, and no other pleadings therein, we must accept the allegation for purposes of the appeal. In any event, the Government, as stated, has conceded that the offenses were not service connected, and we feel this is clear under the Relford guidelines.
 In terms of these guidelines Schlomann was off duty, off the post and the Government does not argue he was improperly absent from it when the offenses occurred. They were committed away from the base; their commission was at a place not under military control; they occurred within our territorial limits and not in an occupied zone of a foreign country; their commission was in peacetime and unrelated to authority stemming from the war power; there was no connection shown between Schlomann's military duties and the offenses; the victims were not engaged in the performance of duties relating to the military; there was present and available a civilian court where the case might be prosecuted; there is no showing of flouting of military authority; there was no threat to a military post; there was no violation of military property shown; and the offenses were among those traditionally prosecuted in civilian courts. See Alaska Statutes Annotated, 1962, Title 11 Secs. 11.15.010 (first degree murder, including felony murder); 11.15.030 (second degree murder, including unpremeditated murder); 11.15.220 (assault with a dangerous weapon); 11.15.240 (robbery); 11.05.020 (punishment for attempt of offenses).
 On this record we conclude that all the factors point to the offenses being nonservice connected. See Relford v. United States Disciplinary Commandant, supra 401 U.S. at 365, 91 S.Ct. 649. Supporting military jurisdiction there is only Schlomann's status as a serviceman, which was the earlier basis of jurisdiction. See Kinsella v. Singleton, 361 U.S. 234, 240-241, 80 S.Ct. 297, 4 L.Ed.2d 268.
 
 
 [3]
 We note that the Court of Military Appeals has applied O'Callahan to all direct appeals pending on June 2, 1969, when the O'Callahan decision was rendered. See Mercer v. Dillon, 19 USCMA 264, 41 CMR 264. Since Schlomann's convictions became final in 1967 this limited retroactivity does not benefit him
 
 
 [4]
 The opinion of the Court of Military Appeals, United States v. Schlomann, supra, and that of the Board of Review do not discuss these issues. The record and information before us do not otherwise show whether these issues were raised prior to these habeas proceedings
 
 
 [5]
 We have also examined United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434, which afforded retroactivity to Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United State, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906. We feel that the Coin & Currency case is different in that it involved a constitutional immunity barring any punishment. O'Callahan, on the other hand, involved no such constitutional immunity from punishment, but a question of jurisdiction of State or military courts to hear the case. See Gosa v. Mayden, supra 450 F.2d at 758-759
 
 
 [6]
 Among the decisions denying retroactivity to cases recognizing new constitutional rules are: Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (holding the rule on the scope of permissible searches incident to arrest announced in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, not to be retroactive); DeStefano v. Woods, supra (holding the rule that a state cannot deny a jury trial in serious criminal cases announced in Duncan v. Louisiana, 391 U.S. 194, 88 S.Ct. 1444, 20 L.Ed.2d 491 and the rule that there is a right to a jury trial for serious contempts announced in Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, not to be retroactive); Stovall v. Denno, 388 U.S. 293, 89 S.Ct. 1967, 18 L.Ed.2d 1199 (holding the rule that an accused has a right to counsel at any critical confrontation announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, not to be retroactive); Johnson v. New Jersey, supra (holding the rules on inadmissibility of confessions announced in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, not to be retroactive); Tehan v. Shott, supra (holding the rule against adverse comments on a defendant's failure to testify as violative of the privilege against self-incrimination, announced in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, not to be retroactive); Linkletter v. Walker, supra (holding the application as to state proceedings of the exclusionary rule by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, not to be retroactive). And see Appendix to concurring opinion of Mr. Justice Brennan, United States v. United States Coin & Currency, supra
 
 
 [7]
 In Johnson v. New Jersey, supra, 384 U.S. at 728, 86 S.Ct. at 1778, the Court also noted that Linkletter had denied retroactivity to rights of immunity from unjustifiable intrusions upon privacy, characterized as ". . . the most comprehensive of rights and the right most valued by civilized men," citing the dissenting opinion of Justice Brandeis in Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944
 
 
 [8]
 North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (holding the guarantee against double jeopardy applicable to the states as announced in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, to be retroactive); McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (holding the rule requiring that counsel be furnished in proceedings for probation or imposition of deferred sentence as announced in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336, to be retroactive); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (holding the right to counsel extends to preliminary hearing where defendant enters a plea and such plea is put into evidence at subsequent trial, White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, to be retroactive); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (holding that testimony of witnesses absent from the jurisdiction shall not be used unless good faith effort has been made by the state to secure appearance of the witnesses as announced in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 to be retroactive); Witherspoon v. Illinois, 391 U.S. 510, 523 n. 22, 88 S.Ct. 1770, 20 L.Ed.2d 776 (holding retroactive the rule that persons with conscientious or religious scruples against capital punishment cannot be excluded from juries); Smith v. Crouse, Warden, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (holding that counsel must be appointed to indigents for purposes of appeal as announced in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 to be retroactive); McNerlin v. Denno, 378 U.S. 575, 84 S.Ct. 1933, 12 L.Ed.2d 1041 (holding that due process forbids the use of a coerced confession irrespective of its truth as announced in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 to be retroactive); Doughty v. Maxwell, Warden, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (holding the right to assistance of counsel as announced in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, to be retroactive); Eskridge v. Washington St. Bd. of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (holding that indigents have a right to a transcript on appeal as announced in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, to be retroactive)
 
 
 [9]
 Alaska does provide for indictment by grand jury for infamous crimes, with an exception for cases arising in the armed forces in time of war or insurrection. See Alaska Statutes Annotated, 1962, Title 12 Sec. 12.80.020
 
 
 [10]
 Appellant relies on Toth U. S. ex rel. v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (discharged military personnel cannot be subjected to court-martial); Grisham v. Hagan, 361 U.S. 278, 80 S.Ct. 310, 4 L.Ed.2d 279, and McElroy v. U. S. ex rel. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (civilian employees of the military while stationed overseas cannot be subjected to court-martial in peacetime); Kinsella v. U. S. ex rel. Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268, and Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (civilian military dependents overseas cannot be subjected to court-martial in peacetime)
 
 
 [11]
 See also the data concerning the offenses occurring off military reservations in which the Army assumed juridiction in 1967 in Relford v. United States Disciplinary Commandant, supra, 401 U.S. at 370 n. 14, 91 S.Ct. 649