**UNITED STATES of America, Plaintiff,**

v.

**Kim Ford CUCH, Defendant.**

No. 94–C–0494–S.

United States District Court, D. Utah, Central Division.

Jan. 20, 1995.

**768**

Barbara Bearnson, Asst. U.S. Atty., U.S. Attorney's Office, Salt Lake City, UT, for plaintiff.

Manny C. Garcia, Salt Lake City, UT, for defendant.

## MEMORANDUM DECISION

SAM, District Judge.

This matter is before the court on movant Cuch's motion to vacate judgment, conviction and commitment pursuant to 28 U.S.C. § 2255. The matter was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). A report and recommendation ("R & R") was issued by the magistrate judge on July 26, 1994. On August 9, 1994 the government filed objections to the R & R. The movant has filed no responsive pleading to the government's objections; however, a hearing was held October 18, 1994, all counsel were in attendance and movant's counsel presented argument to the court.[1] After the hearing the parties were requested to submit supplemental briefing. Supplemental briefing was concluded on January 3, 1995. Having considered the oral and written arguments of counsel and conducted a *de novo* review of the conclusions of the R & R, the court is prepared to issue the following memorandum decision.

### I. Background

In 1992 movant pled guilty to charges of sexual abuse in violation of 18 U.S.C. § 2242(2)(B) and abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). Movant was sentenced, based on his conviction, and is now serving his sentence at the federal correctional institution at Safford, Arizona. Movant did not appeal his conviction to the Court of Appeals for the Tenth Circuit nor did he use any other available federal remedies, including previous post-conviction motions under 28 U.S.C. § 2255.

Movant is an Indian and his crime was committed in Roosevelt, Utah. At the time of his conviction, under Tenth Circuit law, Roosevelt, Utah was believed to be "Indian country," as that term is defined in 18 U.S.C. § 1151, and jurisdiction for his crime was believed to lie exclusively with the federal court.[2]

---

1. Movant Cuch was represented by Manny Garcia, Esq. The government was represented by U.S. Attorney Scott M. Matheson, Jr. and Assistant U.S. Attorneys Barbara Bearnson and Matthew R. Howell.

2. 18 U.S.C. § 1151, in relevant part, defines "Indian country" as follows:

   ... (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

   Movant was charged with felony offenses enumerated in 18 U.S.C. § 1153(a). The United States District Court has exclusive jurisdiction

In *Hagen v. Utah*, —— U.S. ——, 114 S.Ct. 958, 127 L.Ed.2d 252 (1994), the Supreme Court determined that Roosevelt, Utah was not within Indian country because it was not within the territorial area of the Uintah/Ouray Indian Reservation. *Id.* at ——, 114 S.Ct. at 970. Movant claims that since his crime was not committed in "Indian country," the offense was not within the jurisdiction of this court and no federal offense was committed.

Although it settled the issue of diminishment of the Indian Reservation in question, the Supreme Court in *Hagen* did not address the effect of its holding on federal criminal convictions that relied on §§ 1152 or 1153 for jurisdiction and were based on conduct that occurred in areas that, as a result of *Hagen*, are no longer considered to be "Indian country." The question before this court for the first time is whether to apply *Hagen* retroactively to collaterally attack otherwise sound, fundamentally fair convictions.

## II. Analysis

This court notes the unique and unprecedented nature of the issue presented. The court, therefore, is unable to rely exclusively on any of the "retroactivity tests" heretofore announced or applied. Nor may the court blindly apply the settled rule that the absence of subject matter jurisdiction renders a conviction void ab initio. *See U.S. v. Johnson*, 457 U.S. 537, 550–51, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982). Rather, this court, as it must, has considered the facts and the state of the law at the time of petitioner's conviction and fashioned a rule which will protect the rights and expectations of all parties involved in this litigation.

over the crimes enumerated in 18 U.S.C. §§ 1152 and 1153(a). The relevant portion of 18 U.S.C. § 1152 provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

Section 1153(a) provides:

(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a

The jurisdictional context in place at the time of petitioner's offense, trial and conviction dictated exclusive federal jurisdiction. As more fully outlined by the government in its Answer to Motion for Post–Conviction Relief Under 28 U.S.C. § 2255 ("Govt.'s Answer") at pp. 6–11, at all relevant times the state was barred by stipulations, federal injunctions, federal decisional law, including Tenth Circuit authority, and court order from exercising civil or criminal jurisdiction over the Ute Tribe or any of its members at any location within the original boundaries of the Uintah Reservation, including the area at issue in *Hagen*.[3] Thus, from the time of the first preliminary injunction in 1976,

until the United States Supreme Court decided *Hagen* on February 23, 1994, federal, state, and local law enforcement authorities and prosecutors, defendants, and the federal judges were required to accept that the federal court had exclusive jurisdiction to prosecute the crimes enumerated in 18 U.S.C. §§ 1152 and 1153(a) that were committed in the area disputed in *Hagen*.

Govt. Answer at 8. To find that *Hagen* applies retroactively would, in the view of this court, have the effect of creating an ex post facto lawless zone in the area affected by the diminishment addressed in *Hagen*. This point distinguishes this case from the precedent cited by the parties and the Indian jurisdiction cases cited by the magistrate judge in the R & R. *See* Govt.'s Obj. at 6 n. 2. As a practical and legal matter, there was no alternative forum for prosecution of movant or others similarly situated from 1976 through announcement of the *Hagen* decision in 1994.

dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

3. As noted in the Government's Objections to the Report and Recommendation of the magistrate judge ("Govt.'s Obj.") at 4–5, the limitations of the Eleventh Amendment did not apply because at all relevant times the state had waived its Eleventh Amendment immunity.

Given this context, the court must determine whether *Hagen* should be applied retroactively. Because the question at issue involves a new substantive interpretation of federal legislation that affects the jurisdiction of this court, the magistrate judge found the cases of *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) had no application. Both involved new rules of criminal procedure. Likewise, the magistrate judge found *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973) distinguishable. *See* R & R at 5–8. While there are aspects of each of these cases, as well as others cited by the parties, which distinguish them from the instant situation, the court finds sound, general guiding principles in *Gosa* and *Teague* which are helpful and appropriate guideposts in reaching the unique and unprecedented issue before the court.

■ Contrary to the conclusions of the R & R, the court finds *Gosa* stands for the proposition that even when jurisdictional questions are involved, retroactivity is not mandated.[4] This conclusion is supported by the Tenth Circuit's holding in *Schlomann v. Moseley*, 457 F.2d 1223 (10th Cir.1972), *cert. denied* 413 U.S. 919, 93 S.Ct. 3068, 37 L.Ed.2d 1041 (1973).

It may be argued that where a later opinion decides that jurisdiction did not exist as to some subject matter, it must apply retroactively. However, we are not persuaded that because the later decision is grounded in jurisdictional terms that consideration is foreclosed as to how it should apply. Such a retroactivity question is more critical and the factors may be viewed differently, but the jurisdictional terminology does not dispense with the

duty to decide whether "the Court may in the interest of justice make the rule prospective ... where the exigencies of the situation require such an application."

*Schlomann*, 457 F.2d at 1226 (citations omitted).

Thus, a court may look to several factors to determine the propriety of retroactive application of a new Supreme Court ruling. The court finds the guidelines established in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), helpful. The court in *Stovall* considered: (a) the purpose to be served by the new standard or rule, (b) the extent of reliance by law enforcement authorities on the old standard or rule, and (c) the effect on the administration of justice of a retroactive application of the new standard or rule. *See Stovall*, 388 U.S. at 297, 87 S.Ct. at 1970.

■ Regarding the purpose to be served by the Supreme Court's pronouncement in *Hagen*, that Court ruled that the Uintah Indian Reservation was diminished shortly after the turn of the century and, therefore, the State of Utah had jurisdiction over the opened lands. *See Hagen*, —— U.S. at —— ——, 114 S.Ct. at 959–960. Nowhere in *Hagen* did either the petitioner or the Supreme Court challenge the fundamental fairness or accuracy of the conviction or in any way link the holding to any such defect.[5] Since the Supreme Court's interpretation of the acts of Congress which resulted in diminishment was not intended to overcome a trial aspect that substantially impaired the truth-finding function of the federal court, retroactivity is not compelled and the court finds it appropriate to analyze the issue under the second and third elements of the *Stovall* analysis.

4. In *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), the Supreme Court held that only service connected crimes are under military jurisdiction. *O'Callahan* accordingly limited the subject matter jurisdiction of military courts. That holding left open the question, not unlike the question before this court, of what happens to the numerous pre-*O'Callahan* court martial convictions for crimes which were not service connected. The Supreme Court held in *Gosa*, 413 U.S. at 676, 93 S.Ct. at 2934, that *O'Callahan* did not require reversal of all such

convictions rendered since 1916 when Congress provided for military trials for civilian offenses committed by persons in the Armed Services. *O'Callahan* would be applied prospectively only. *See Gosa*, 413 U.S. at 665, 93 S.Ct. at 2926.

5. Likewise, in *O'Callahan* the new rule was not intended to remedy a defect that substantially impaired the truth-finding function of the court martial proceedings. *See Gosa*, 413 U.S. at 682, 93 S.Ct. at 2937.

Regarding the reliance factor, this court finds that from the period of the 1976 preliminary injunction through the 1994 *Hagen* decision, and in particular from the point of the Tenth Circuit's affirmance of the district court's decision in *Ute Indian Tribe v. Utah,* 773 F.2d 1087 (10th Cir.1985) (en banc), *cert. denied,* 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986), the law was "settled," giving federal courts exclusive jurisdiction over crimes committed in the area in question.

The court is persuaded that, for all practical purposes, no alternative to the federal forum existed in which to try persons such as movant. For over a decade, the state and federal criminal justice systems justifiably relied on Tenth Circuit law regarding the Reservation boundaries. Neither the federal nor state systems, nor in particular the individuals who relied on the finality of the federal prosecutions during this time period, can be faulted for their reliance on the law as it stood for over a decade before *Hagen.* Neither can they be faulted for not anticipating the Supreme Court's clear break with *Ute Indian Tribe,* especially in light of the denial of a writ of certiorari in that matter.[6]

If the reliance factor is given weight, it becomes increasingly clear that prospectivity is appropriate in this instance. This conclusion is supported by the Supreme Court's actions in *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Northern Pipeline* the Court held that Congress had acted unconstitutionally in conferring power on the Article I bankruptcy courts, via the Bankruptcy Reform Act of 1978, and, as a result, the bankruptcy courts had been improperly exercising jurisdiction in specified instances for the previous four years. The holding was not given retroactive effect. The court is not persuaded by the R & R's

discussion of *Northern Pipeline* as a case involving "a deficiency in allocation of judicial power not a deficiency of subject matter jurisdiction as to the whole federal court system." R & R at 15. While admittedly not controlling precedent, the *Northern Pipeline* decision evidences that retroactivity is not mandated even in cases involving jurisdictional issues. Rather, the Supreme Court confirmed the propriety of considering the consequences of retroactive application, including the possible "substantial injustice and hardship" which may be visited upon those litigants who relied upon existing law. *Northern Pipeline,* 458 U.S. at 88, 102 S.Ct. at 2880.

The third *Stovall* factor involves consideration of the effect a finding of retroactivity would have on the administration of justice. The government has represented to the court that numerous, otherwise fundamentally fair and final, convictions will be jeopardized if *Hagen* is applied retroactively. It is not a sufficient remedy for this serious problem to assume that these offenders may simply be retried in state court. In reality, statute of limitations problems, the passage of time and lack of resources may allow violent offenders to go free. "Society must not be made to tolerate a result of that kind when there is no significant question concerning the accuracy of the process by which judgment was rendered or, in other words, when essential justice is not involved." *Gosa,* 413 U.S. at 685, 93 S.Ct. at 2938. Even where jurisdictional questions are involved, the interests of society compel prospective application where the Supreme Court pronouncement does not question the accuracy of prior adjudications of guilt.

The court's conclusions are also supported by the general principles of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[7] The *Teague* court reiterated the

---

6. It is not inappropriate to consider the denial of a writ of certiorari in connection with evaluation of the parties' reliance on the law in place at the time of movant's offense and conviction despite the well-settled rule that "denial of a writ of certiorari imports no expression of opinion upon the merits of the case." *United States v. Carver,* 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361 (1923).

7. The court acknowledges and does not dispute the technical reading of *Teague* contained in the R & R. *Teague* certainly did involve potential retroactive application of a new rule of criminal procedure. Nevertheless, it is the underlying principles of fairness and reliability present in *Teague* which the court found relevant and consistent with its decision. The court also found

standard that when the fundamental fairness of the conviction is not in question, it is appropriate to apply a new pronouncement prospectively to preserve and promote finality.[8]

The R & R discusses the cases of *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), *United States v. Sood,* 969 F.2d 774 (9th Cir.1992) and *United States v. Shelton,* 848 F.2d 1485 (10th Cir. 1988) in supporting the conclusion that retroactivity is mandated where the subsequent decision makes the conduct in question no longer criminal. In *Davis* the intervening decision determined the conduct may not constitute a crime and therefore Davis' conviction and punishment would be for an act that the law does not make criminal. The *Davis* Court "suggested that the appropriate inquiry was whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice...." 417 U.S. at 346, 94 S.Ct. at 2305 (citations omitted). Davis' situation fits this test. For reasons hereinafter discussed, movant's situation does not.

*Davis, Sood* and *Shelton* involved situations where the conduct on which the conviction was based was later found not to constitute a crime.[9] As stated by the government,

[t]he situation now before the Court is distinguishable. Congress clearly intended the conduct described in 18 U.S.C. § 1153 to be criminal. Furthermore, because each of the described actions is criminal in every jurisdiction in the United States, Congress certainly intended to make these actions prosecutable by the federal government in locations where the states would not have jurisdiction.

Govt. Obj. at 12. Movant's conduct constituted a crime in 1992 at the time of his conviction, it is criminal today and it will always be criminal. Furthermore, this court has already found that from 1976 through the *Hagen* decision in 1994 it was justifiably believed that the states did not have jurisdiction. Hence, law enforcement turned to the only available forum—the federal court. Thus, neither *Shelton* nor the other related cases discussed in the R & R are controlling on the question before this court.

### III.  Conclusion

The court concludes that the purpose to be served by the *Hagen* ruling, the reliance on the law as it stood before that decision, and the effects of finding retroactivity all require that *Hagen* be accorded prospective application only. When faced with the invalidation of convictions which were the product of good-faith reliance on existing law, the only acceptable resolution is one that promotes finality and preserves fair and accurate convictions of violent offenders and avoids the burdens on public safety and judicial administration that retroactivity would create.[10] The rule of law is strengthened when courts, in their search for fairness, giving proper consideration to the facts and applicable precedent, allow the law to be an instrument in obtaining a result that promotes order, justice and equity.

Accordingly, movant's motion to vacate judgment, conviction and commitment pursuant to 28 U.S.C. Section 2255 is DENIED.

---

*Teague's* general rule of non-retroactivity on collateral review pertinent.

**8.** The court's consideration of the *Stovall* and *Teague* principles of fairness and reliability in connection with determining the retroactivity of *Hagen* is not without current support. In *Hagen* itself the Supreme Court considered the justifiable expectations of the people in determining whether the Reservation had been diminished. *See Hagen,* —— U.S. at ——, 114 S.Ct. at 960.

**9.** In *Shelton,* 848 F.2d 1485, the Tenth Circuit addressed whether to apply *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), retroactively. *McNally* held that

Congress had not intended to criminalize, under 18 U.S.C. § 1341 (the mail fraud statute), schemes to defraud the public of its intangible right to honest government. Because Congress had not made such conduct criminal, it had never been criminal and therefore could not be the basis for the conviction in *Shelton.*

**10.** The court notes the arguments of both parties not specifically addressed in this memorandum decision. In particular, the government's argument regarding the effect of movant's guilty plea under *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), is persuasive. However, in view of the court's analysis, the court is not inclined to address these arguments.