John COVEY, Movant,

v.

**UNITED STATES of America,**
**Respondent.**

No. Civ 00–4028.
No. CR 95–40110.

United States District Court,
D. South Dakota,
Southern Division.

Aug. 21, 2000.

Gary Conklin, Sioux Falls, SD, for petitioner.

Rita D. Allen, United States Attorney's Office, Sioux Falls, SD, for respondent.

### AMENDED MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Movant, John Covey, brought a motion under 28 U.S.C. § 2255, contending that the Court lacked jurisdiction to enter the Judgment in a Criminal Case signed by the Court on July 10, 1996, sentencing him to 33 months' incarceration and three years' supervised release and imposing a fine in the amount of $1,000.00, a special assessment of $50.00 and restitution in the amount of $500.00. (CR 95–40110, Doc. 35.) Movant pled guilty to Count 1 of the Indictment charging movant with abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(1), 2246(3) and 1152. The abusive sexual contact occurred at a residence in Wagner, South Dakota. The government has conceded that the crime was committed on originally allotted land which has passed out of Indian hands within the Yankton Sioux Reservation.[1]

### I. Background

In his motion, movant contends that his criminal Judgment was obtained without federal jurisdiction in light of the Eighth Circuit Court of Appeals' decision in *Yankton Sioux Tribe v. Gaffey*, 188 F.3d 1010 (8th Cir.1999) (*Gaffey II* ), *cert. denied*, —— U.S. ——, 120 S.Ct. 2717, 147 L.Ed.2d 982 (2000). The government contends that in view of the litigation and subsequent appeals regarding jurisdiction on the Yankton Sioux Reservation, retroactive application of the Eighth Circuit's decision in *Gaffey II*, would produce substantial injustice and hardship and requests that movant's motion be denied.

The Yankton Sioux Tribe brought a declaratory judgment action in this Court to enforce the Tribe's right to regulate a landfill site the Tribe claimed was within the exterior boundaries of the Yankton Sioux Reservation. On June 14, 1995, this Court ruled that the agreement with the Yankton Sioux Tribe for the sale of surplus lands, ratified in 1894, did not disestablish or diminish the exterior boundaries of the Yankton Sioux Reservation as such were set out in the 1858 treaty between the

---

1. The government admits that the crime for which movant, John Covey, was convicted occurred in August 1995 at a residence in Wagner, South Dakota, located on originally allotted land which has passed out of Indian hands and that this land is not in trust status. Thus, the offense did not occur in "Indian country" pursuant to the Eighth Circuit Court of Appeals' decision in *Yankton Sioux Tribe v. Gaffey*, 188 F.3d 1010 (8th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 2717 (2000), which was the sole basis for federal jurisdiction in this matter. *See* 18 U.S.C. § 1152.

United States and the Yankton Sioux Tribe. *Yankton Sioux Tribe v. Southern Missouri Waste Management Dist.*, 890 F.Supp. 878 (D.S.D.1995) (subsequent history omitted). The Eighth Circuit Court of Appeals affirmed the Court's decision. *Yankton Sioux Tribe v. Southern Missouri Waste Management Dist.*, 99 F.3d 1439 (8th Cir.1996) (subsequent history omitted). The Supreme Court granted the State's petition for certiorari and the Supreme Court held that the 1894 Act of Congress ratifying the 1892 Agreement with the Yankton Sioux Tribe for the sale of surplus Tribal lands terminated the reservation status of the unallotted, ceded lands, thereby diminishing the Yankton Sioux Reservation. *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 118 S.Ct. 789, 139 L.Ed.2d 773 (1998). Based on the "conflicting understandings about the status of the Reservation, together with the fact that the Tribe continues to own land in common," the Supreme Court restricted its holding to whether the unallotted, ceded lands were severed from the Reservation and remanded the case for further proceedings. *Yankton Sioux Tribe*, 522 U.S. at 357–58, 118 S.Ct. 789.

The Yankton Sioux Tribe then filed in this Court a complaint for injunctive relief and for declaratory judgment against the Charles Mix County State's Attorney, the Charles Mix County Commission, and the Governor and Attorney General of the State of South Dakota. The Tribe sought a judgment declaring that all lands within the original boundaries of the Yankton Sioux Reservation not ceded by the 1894 Act of Congress constitute the Yankton Sioux Reservation, falling within the jurisdiction of the Yankton Sioux Tribe and the United States government. The United States moved to intervene on its own behalf and for the benefit of the Yankton Sioux Tribe. The Court then held that the 53rd Congress did not disestablish the Yankton Sioux Reservation in 1894, and that the unceded lands continue their reservation status. *Yankton Sioux Tribe v.*

*Gaffey*, 14 F.Supp.2d 1135, 1159–60 (D.S.D.1998) (*Gaffey I* ).

The Eighth Circuit then held that the Yankton Sioux Reservation had not been disestablished, but that it had been diminished by the loss of those lands originally allotted to Tribal members which had passed out of Indian hands. *Gaffey II*, 188 F.3d at 1030. The Eighth Circuit denied all parties' petitions for rehearing and the mandate was issued on December 22, 1999. The Yankton Sioux Tribe and the State of South Dakota filed petitions for writ of certiorari to the Supreme Court. Those petitions were denied by the Supreme Court on June 26, 2000. *South Dakota v. Yankton Sioux Tribe*, —— U.S. ——, 120 S.Ct. 2717, 147 L.Ed.2d 982 (2000).

Movant contends the Eighth Circuit's ruling in *Gaffey II*, that the Yankton Sioux Reservation is further diminished by the loss of those lands originally allotted to tribal members which have passed out of Indian hands, should be applied retroactively and therefore, the Judgment in movant's case should be vacated. The government, on the other hand, contends the ruling in *Gaffey II* should only be applied prospectively, leaving movant's final criminal Judgment undisturbed. The government primarily relies on the decisions in *United States v. Cuch*, 79 F.3d 987 (10th Cir.), *cert. denied*, 519 U.S. 963, 117 S.Ct. 384, 136 L.Ed.2d 301 (1996) and *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973) in advancing the argument that *Gaffey II* should only be applied prospectively.

## II. *Decision*

 Federal courts are courts of limited jurisdiction. *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir.1993). Federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Id.* There is a body of federal common law, but federal common law does not separately confer any jurisdiction upon the federal courts, as that must come from either the

Constitution or legislation passed by Congress. Federal courts have jurisdiction over claims founded upon federal common law by virtue of 28 U.S.C. § 1331. *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (holding that " § 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin."); *Boyster v. Roden,* 628 F.2d 1121, 1122 (8th Cir.1980) (recognizing that "[j]urisdiction under 28 U.S.C. § 1331(a) may rest on federal common law."). In cases in which a holding and a rule is to be applied prospectively only, those cases have involved a constitutional basis for the prospective-only application. Those cases include the Supreme Court's decision in *Gosa,* 413 U.S. at 685, 93 S.Ct. 2926, and numerous other federal cases. Federal court jurisdiction cases present an anomaly in that even if it is desirable for federal courts to have jurisdiction in some cases before the courts, no jurisdiction can be found to exist if it has not previously been granted by the Constitution or Congress.

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or *that the court was without jurisdiction to impose such sentence,* or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255 (emphasis added). Section 2255 further instructs that "[i]f the court finds that *the judgment was rendered without jurisdiction,* or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court *shall* vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* (emphasis added),

█ The Eighth Circuit's decision in *Gaffey II* clearly establishes that the Court lacked jurisdiction to impose the sentence on movant as set forth in the Judgment dated July 10, 1996. (CR 95–40110, Doc. 35.) The government contends that because the Court appeared to possess jurisdiction in movant's criminal case on the date Judgment was entered and the time for appeal has expired, movant cannot obtain relief pursuant to 28 U.S.C. § 2255 despite the subsequent ruling by the Eighth Circuit in *Gaffey II* which establishes that the Court did not have jurisdiction in movant's criminal case. The government attempts to distinguish the cases on collateral review from cases on direct appeal when *Gaffey II* was decided. Cases on direct appeal or otherwise not final when *Gaffey II* was decided are subject to the decision. *United States v. Duysak,* 205 F.3d 1348, 1999 WL 1220079 (8th Cir. Dec.14, 1999) (unpublished opinion) (conviction on direct appeal reversed on basis of *Gaffey II,* with no discussion concerning retroactivity as the case did not present the issue.)

The Supreme Court recognized that different categories of cases exist in determining whether a judicial decision should be applied retroactively. *United States v. Johnson,* 457 U.S. 537, 548–551, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). The instant case falls within the third category identified in *Johnson,* which involves a ruling that "a trial court lacked authority to convict or punish a criminal defendant in the first place." 457 U.S. at 550, 102 S.Ct. 2579. The Supreme Court recognized that full retroactivity applies in such cases, wherein "the court has relied less on the technique of retroactive application than on the notion that the prior inconsistent judgments or sentences were void ab initio." *Id.*

The Supreme Court's decision in *Gosa,* 413 U.S. at 685, 93 S.Ct. 2926, was heavily relied upon by the Tenth Circuit in *Cuch.* In *Gosa* the Supreme Court held that

court-martial convictions of servicemen on one charge of rape and one charge of theft from a civilian would not be overturned because the Court would not give retroactive application to a new constitutional principle that military tribunals generally do not have jurisdiction to try servicemen for offenses which are not service-connected. 413 U.S. at 685, 93 S.Ct. 2926. The issue in *Gosa* was whether the Supreme Court's earlier decision in *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) was to be applied retroactively. The Supreme Court harmonized the express guarantees of the Fifth and Sixth Amendments, relating to grand jury indictment and trial by a civilian jury, with Congress' power under Article I, section 8, clause 14 of the Constitution, and concluded that a military tribunal ordinarily may not try a serviceman charged with a crime that has no service connection. Therefore, although *O'Callahan* involved court-martial jurisdiction, the ultimate holding was based upon the Constitution. "Although the Court in *O'Callahan* did not expressly overrule any prior decision, it did announce a new constitutional principle, and it effected a decisional change in attitude that had prevailed for many decades." *Gosa,* 413 U.S. at 673, 93 S.Ct. 2926. If the decision in *O'Callahan* had been applied retroactively, it could have required reversal of all nonservice-connected offenses rendered since 1916 when Congress provided for military trials for civilian offenses committed by persons in the Armed Services. *See Gosa,* 413 U.S. at 676, 93 S.Ct. 2926. Retroactive application in the instant case could potentially affect a total of 56 criminal cases spanning from 1995 to 1999, which is completely distinguishable as being far different factually and legally from the extreme situation faced by the Supreme Court in *Gosa.* In *Gosa* the validity of many, many criminal convictions spanning several decades was at issue. In addition, a different result in *Gosa* would have presented many administrative problems, such as the determina-tion of changed benefits and back pay once dishonorable discharges were vacated.

The Supreme Court in *Gosa* applied the three-prong test of *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), to determine whether *O'Callahan* should be applied retroactively. *Gosa,* 413 U.S. at 679, 93 S.Ct. 2926. The *Stovall* test involves an evaluation of "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." 388 U.S. at 297, 87 S.Ct. 1967. These factors were initially set forth in *Linkletter v. Walker,* 381 U.S. 618, 636, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), which was expressly abandoned by the Supreme Court in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (rejecting the *Linkletter* retroactivity standard for cases pending on direct review at the time a new rule is announced), and *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (abandoning the *Linkletter* retroactivity standard for cases on collateral review). Therefore, the continuing validity of the method of analysis in *Gosa* is, at best, questionable. Even if the method of analysis in *Gosa* has been implicitly overruled, although not the result, the instant case is distinguishable and more analogous to the retroactivity analysis in *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), as more fully explained below. The retroactivity issue in this case does not involve a new *constitutional* rule, rather it involves a decision, not based on *constitutional* grounds, that the Court never had jurisdiction over the movant's criminal case.

The government heavily relies upon the Tenth Circuit Court of Appeals' decision in *Cuch,* 79 F.3d at 995, to support its position that *Gaffey II* should not be applied retroactively. The Tenth Circuit concluded a Supreme Court ruling, that land on which the petitioners committed crimes

was not part of an Indian reservation, did not apply retroactively to criminal convictions on collateral review. *Id.* Relying on various decisions in litigation involving the Ute Indian Tribe, federal prosecutors filed charges against Indians for criminal acts committed within the historical boundaries of the Reservation from 1976 until 1994. *Id.* at 989. In 1994, the Supreme Court ruled that the state had jurisdiction over the lands in question because Congress diminished the Uintah Reservation in the early 1900's. *Hagen v. Utah,* 510 U.S. 399, 114 S.Ct. 958, 127 L.Ed.2d 252 (1994). Retroactive application of the Supreme Court's ruling in *Hagen* could have resulted in the setting aside of federal criminal convictions spanning nearly twenty years. Rather than vacating such convictions, the Tenth Circuit concluded that "no controlling authority mandates retroactivity," and "[p]rinciples of finality and fairness" dictate that the Supreme Court's decision be applied prospectively with respect to federal criminal convictions on collateral review. *Id.* at 995. The Tenth Circuit concluded that " 'the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective.' " *Id.* (quoting *Linkletter,* 381 U.S. at 628, 85 S.Ct. 1731). Although recognizing that the jurisdictional nature of a decision "makes the retroactivity question 'more critical,' " the Tenth Circuit adopted the position that the "nature of the case alone 'does not dispense with the duty to decide whether "the Court may in the interest of justice make the rule prospective ... where the exigencies of the situation require such application." ' " *Cuch,* 79 F.3d at 995 (quoting *Schlomann v. Moseley,* 457 F.2d 1223, 1227 (10th Cir. 1972), *cert. denied,* 413 U.S. 919, 93 S.Ct. 3068, 37 L.Ed.2d 1041 (1973) (quoting *Johnson v. New Jersey,* 384 U.S. 719, 726–27, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (quoting *Linkletter,* 381 U.S. at 628, 85 S.Ct. 1731))). Exigencies of a situation are no basis for a court to confer jurisdiction upon itself for past cases where it recognizes it has no jurisdiction for similarly situated pending or future cases.

The jurisdictional issue in *Cuch* did not involve constitutional rules but the Tenth Circuit, nevertheless, relied on Supreme Court precedent relating to retroactivity in cases involving new constitutional rules of criminal procedure. 79 F.3d at 990–95. The Court finds that the Tenth Circuit's decision in *Cuch* was result-driven in light of the compelling factual and legal implications of a decision requiring retroactivity. It is tempting to follow the holding of *Cuch.* However, the strong policy consideration in *Cuch* and *Gosa* for finality in the legal process by no retroactivity is not present to anywhere near a comparable degree in the present case. In the 56 cases that could be affected by this decision, there is finality of the legal process in all but whichever, if any, of the petitioners who receive relief the state elects to retry. There will be no further legal action with regard to the remaining cases. Further, it would be an injustice to those who were convicted without jurisdiction to have them by the happenstance of whether they appealed and whether their appeal was completed receive a result different from those defendants otherwise similarly situated who appealed and had not yet had their appeal decided when *Gaffey II* was decided. Likewise, those who waived their right of appeal as a part of a plea agreement could have a different result from those who appealed. It is not within the authority of the federal courts to say, in determining jurisdiction arising from treaties from the 1800s, as opposed to interpreting the Constitution, that the federal courts are without jurisdiction on what had been reservation lands and then go on to say that the federal courts did and do have jurisdiction over cases arising from those same lands where those cases were final at the time of the jurisdictional decision. Neither expediency, nor even compelling circumstances, can create jurisdiction where none exists. The Constitution and the Congress establish the jurisdiction of the federal courts. So long as it is not

contrary to the Constitution, Congress can make legislation retroactive. There is no statutory retroactivity unless it is specifically indicated. *Lindh v. Murphy,* 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The federal courts do not have the same latitude, except for the retroactivity exception doctrines now in existence on constitutional issues. In implementing the treaty agreements with the Yankton Sioux, Congress did not state that the legislation, or its effect, would be retroactive.

As an alternative basis for this decision, even if the rationale in *Cuch* were to be applied, the result in this case would be different than in *Cuch* because the circumstances are not nearly as compelling in the present case. In contrast to the circumstances in *Cuch,* the interest of justice does not dictate that the decision at issue in the instant case be applied prospectively. Rather, if the Court were to adopt the rationale of the court in *Cuch,* the Court would find the interest of justice dictates that *Gaffey II* be applied retroactively to invalidate the criminal convictions over which the Court did not have jurisdiction. The Court is not faced with the same compelling degree of "exigencies of the situation" confronted by the Tenth Circuit in *Cuch.* Applying the decision in *Gaffey II* retroactively will potentially affect a universe of approximately 56 criminal cases. Of those 56 cases which may be potentially affected by the decision in *Gaffey II,* only fifteen motions pursuant to 28 U.S.C. § 2255 are pending before the Court in which the movants are alleging the Court lacked jurisdiction over their criminal cases.[2] Although the Tenth Circuit found the long passage of time (nearly twenty years) in *Cuch* created a situation where successful prosecution in a state forum was slim, the chances are significantly better in the instant case because federal criminal prosecutions did not begin in the disputed area until 1995. Moreover, neither principles of fairness nor finality dictate that the Eighth Circuit's decision in *Gaffey II* apply prospectively. The Court lacked jurisdiction to impose the criminal Judgment on movant, and principles of fairness can only dictate in the instant case that movant's Judgment be vacated. The principle of finality is not as significant in this case as it was in *Cuch* wherein it was stated that "invalidation of a final conviction could well mean that the guilty will go unpunished due to the impracticability of charging and trying the defendant after a long interval of time." *Cuch,* 79 F.3d at 991. The criminal cases affected by the decision in *Gaffey II* date back to 1995. The Court is familiar with the cases, as all but five of the 56 potential cases were before this Court. The Court does not believe the state would be significantly hampered by the delay in charging and trying any of the defendants in the criminal cases affected by *Gaffey II.*[3] Requiring retrial of a defendant after five years is significantly different than requiring a retrial after twenty years as in *Cuch* or after several decades as in *Gosa.*

In *Davis,* the Supreme Court held that where a habeas corpus petitioner has been convicted of violating a law, and an intervening decision establishes that the petitioner's conduct was not a violation of that law, then habeas relief is appropriate. 417 U.S. at 346–47, 94 S.Ct. 2298. Although *Davis* involved a change in non-constitutional substantive law, rather than a change in a non-constitutionally based jur-

---

2. In January, 2000, the United States Attorney for the District of South Dakota at the request of the Court notified all defendants that could be affected by this decision of the possibility of relief and the steps to be taken to attempt to obtain such relief. The notification did reserve all rights including resisting retroactive application. Thirty of the 56 cases are juvenile cases.

3. In the approximately forty cases in which no petition has yet been filed, the Court is without jurisdiction to consider setting aside the conviction. There could be a variety of reasons that these defendants, although individually informed of the possibility of relief, chose not to petition.

isdictional rule, the Court finds the instant case is more analogous to *Davis* than to *Gosa*. In the instant case, the Court never had jurisdiction over movant's criminal case. Similar to the result in *Davis*, the Court concludes that the Judgment entered by the Court in the instant case in the absence of jurisdiction "inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255." *Davis*, 417 U.S. at 346–47, 94 S.Ct. 2298 (quotation marks omitted).

The Court finds that the Supreme Court's general rule of non-retroactivity on collateral review based on new constitutional rules of criminal procedure set forth in *Teague*, 489 U.S. at 310, 109 S.Ct. 1060, is inapplicable to the instant case. The Supreme Court held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* The instant case does not involve any new constitutional rules of criminal procedure. Rather, the claims in this case relate to the jurisdiction of the Court, pursuant to treaties between the United States and the Yankton Sioux and subsequent legislation as interpreted by the federal courts, to impose criminal penalties. The Court initially concluded jurisdiction was proper in this Court, *see Yankton Sioux Tribe*, 890 F.Supp. at 878, but it was later determined that the Yankton Sioux Reservation had been diminished by the loss of those lands originally allotted to members of the Yankton Sioux Tribe which had passed out of Indian hands, *see Gaffey II*, 188 F.3d at 1030. These judicial decisions involved jurisdictional issues which were resolved without reference to Constitutional principles and the Court is, therefore, not bound by the non-retroactivity holding in *Teague*. *See e.g., United States v. Dashney*, 52 F.3d 298, 299 (10th Cir.1995) (holding that *Teague* was inapplicable because the new decision at issue in *Dashney* "did not announce a new rule of constitutional crimi-

nal procedure but only 'declared what the law meant from the date of its enactment.' "); *Landgraf v. USI Film Products*, 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (recognizing that in cases of a new jurisdictional rule, "[p]resent law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.' "); *Johnson*, 457 U.S. at 550, 102 S.Ct. 2579 (recognizing that full retroactivity is a necessary adjunct to the ruling that a trial court lacked authority to convict or punish a criminal defendant in the first place based on the notion that the prior inconsistent judgments or sentences were void ab initio.)

■ Although the Court concludes that movant is entitled to relief under 28 U.S.C. § 2255, that relief is limited to his claim of unlawful custody and does not extend to the monetary penalties which were imposed by the Judgment. Several courts of appeal have held that criminal defendants are not entitled to challenge the imposition of monetary penalties, including fines and restitution, in an action under 28 U.S.C. § 2255. *See United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir.1999) (joining several sister circuits in holding that "by its plain terms, § 2255 is available only to defendants who are in custody and claiming the right to be released. It cannot be used solely to challenge a restitution order."); *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir.1999) (holding that "complaints concerning restitution may not be addressed in § 2255 proceedings"); *Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir.1998) (holding that " § 2255 cannot be utilized by a federal prisoner who challenges only the restitution portion of his sentence because § 2255 affords relief only to those prisoners who 'claim the right to be released' from custody."); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (ruling that " § 2255 is not available to challenge an order of restitution imposed as part of a criminal sentence.");

*Smullen v. United States*, 94 F.3d 20, 25–26 (1st Cir.1996) (holding that a criminal defendant, who is in federal custody, may not collaterally challenge the restitution order imposed as part of his sentence); *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir.), *cert. denied*, 516 U.S. 904, 116 S.Ct. 269, 133 L.Ed.2d 191 (1995) (precluding federal prisoner from challenging the imposition of the cost of his imprisonment and supervised release in a § 2255 motion because "[t]he plain language of § 2255 provides only prisoners who claim a right to be released from custody an avenue to challenge their sentences. . . ."); *United States v. Segler*, 37 F.3d 1131, 1136–37 (5th Cir.1994) (holding that relief is not available under 28 U.S.C. § 2255 to challenge the imposition of a fine).

The Fifth Circuit Court of Appeals explained that:

> [Movant's] status as a federal prisoner brings him clearly within the class of [movants] described in § 2255. However, his ineffective assistance of counsel claim relating to his fine raises the question whether his claim arises under § 2255. We conclude that § 2255's limitation on who may seek release from federal custody also implies a limitation on the claims they may assert to obtain a release. Because Congress limited relief under § 2255 to persons in federal custody, we hold that Congress also meant to limit the types of claims cognizable under § 2255 to claims relating to unlawful custody.

*Segler*, 37 F.3d at 1137. The Court has not located an Eighth Circuit Court of Appeals' decision on this issue, but is persuaded by the above cited circuit decisions that movant may not challenge the fine, restitution or special assessment imposed as part of his criminal sentence in this § 2255 proceeding. Therefore, the portion of the Judgment relating to the fine, restitution and special assessment will not be vacated or set aside by the Court. Any money paid for the fine, restitution or special assessment will not be returned to Mr.

Covey as that relief is not available under 28 U.S.C. § 2255. *See, Barnickel,* 113 F.3d at 706 (holding that " § 2255 is not available to challenge an order of restitution imposed as part of a criminal sentence."). To the extent that the fine, restitution and special assessment are unpaid, no further amounts may be required by law to be paid on the basis of the rule of law established by the holding of this case that the Court lacked jurisdiction when the Judgment was entered.

### III. *Conclusion*

A motion to vacate, set aside or correct judgment made pursuant to 28 U.S.C. § 2255 shall be granted "[i]f the court finds that the judgment was rendered without jurisdiction." The Court concludes, for the reasons stated above, that the Eighth Circuit Court of Appeal's non-constitutional decision in *Gaffey II*, 188 F.3d at 1030, shall be given retroactive effect. Therefore, the Court's Judgment in a Criminal Case, dated July 10, 1996, imposed in this case was rendered without jurisdiction. (CR 98–40016, Doc. 33.) The Court finds that the Judgment in movant's case must be vacated and set aside to the extent explained above and that movant must be discharged from the terms of imprisonment and supervised release imposed by the Judgment. Accordingly,

IT IS ORDERED:

1. That, movant John Covey's Motion to vacate, set aside or correct sentence, Doc. 1 in CIV 00–4028, is granted to the extent set forth below in ¶ 2.

2. That the Judgment in a Criminal Case entered by the Court in CR 95–40110, Doc. 35, dated July 10, 1996, is vacated and set aside, pursuant to 28 U.S.C. § 2255, to the extent that the Judgment imposes a sentence of imprisonment and supervised release and movant John Covey is discharged from the terms of imprisonment and supervised release imposed by the Judgment.

3. That the terms of the Judgment in a Criminal Case entered by the Court in CR 95–40110, Doc. 35, dated July 10, 1996, imposing a fine, restitution and special assessment are not set aside and movant may not recover any money paid for the fine, special assessment or restitution, but to the extent the fine, special assessment or restitution remain unpaid, no further amounts may be required by law to be paid by movant.

4. That a copy of this Amended Memorandum Opinion and Order and a copy of the Amended Judgment shall be filed in CR 95–40110.

### AMENDED JUDGMENT

In accordance with the Memorandum Opinion and Order filed this date with the Clerk,

IT IS ORDERED, ADJUDGED, and DECREED that movant John Covey's Motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 is granted to the extent set forth in the Memorandum Opinion and Order filed this date with the Clerk.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that the Judgment in a Criminal Case entered by the Court in CR 95–40110, Doc. 35, dated July 10, 1996, is vacated and set aside to the extent that the Judgment imposes imprisonment and supervised release and movant John Covey is discharged from the terms of the Judgment imposing imprisonment and supervised release.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that the terms of the Judgment in a Criminal Case entered by the Court in CR 95–40110, Doc. 35, imposing a fine, special assessment and restitution are not set aside and movant John Covey may not recover any amounts paid for the fine, special assessment or restitution, but to the extent the fine, special assessment or restitution remain un-

paid, no further amounts may be required by law to be paid by movant John Covey.